# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**Shiloh Management Services, Inc.,**<br><br>Debtor. | **Bankruptcy Case<br>No. 17-01458-JMM** |
| **J. Ford Elsaesser,**<br><br>Plaintiff,<br><br>vs.<br><br>**Mountain West IRA F/B/O Chester Pipkin IRA, Stock Boise, LLP, and Quality Properties, LLP,**<br><br>Defendants. | **Adv. Proceeding<br>No. 19-06074-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

Matthew T. Christensen, Boise, Idaho, Attorney for Plaintiff.

Gery W. Edson, Boise, Idaho, Attorney for Defendants Mountain West IRA F/B/O Chester Pipkin IRA and Stock Boise, LLP.

Jed W. Manwaring, Boise, Idaho, Attorney for Defendant Quality Properties, LLP.

### *Introduction*

The Chapter 7 Trustee ("Trustee") commenced this adversary proceeding on November 25, 2019. Dkt. No. 1. The Defendant, Mountain West IRA FBO Chester Pipkin IRA ("Pipkin"), filed an answer on January 9, 2020, Dkt. No. 9, and Defendants Quality Properties, LLP ("Quality Properties"), Stock Boise, LLC ("Stock Boise"), and Triple B, LLC ("Triple B") filed a joint answer on January 10, 2020. Dkt. No. 10. Trustee filed an amended complaint on May 7, 2020, Dkt. No. 24, and Quality Properties and Pipkin filed answers to the amended complaint on June 2, 2020 and June 3, 2020, respectively. Dkt. Nos. 25 and 26. Trustee and Triple B entered a stipulation resolving the claims against that defendant, Dkt. No. 27, and an appropriate judgment and order was entered by this Court on June 15, 2020. Dkt. No. 28. All remaining parties filed pre-trial memorandums in support of their respective positions. Dkt. Nos. 34, 35, 36, and 37. Trustee and Defendants Pipkin and Stock Boise filed stipulated facts in preparation for trial, Dkt. No. 41, and stipulated to admitting Trustee's Exhibits 100–113 and Defendant's Exhibit 200. Likewise, Trustee and Quality Properties also filed stipulated facts in preparation for trial. Dkt. No. 42. The trial was held on October 19, 2020, at which the parties presented oral arguments; the Court subsequently deemed the matter under advisement. Dkt. No. 44. Having now considered the record, applicable law, and

MEMORANDUM OF DECISION − 2

arguments of the parties, the Court makes the following findings of fact and conclusions of law. Rules 7052; 9014.[1]

### *Findings of Fact*

On November 1, 2017, an involuntary petition was filed concerning the Debtor, Shiloh Management Services, Inc. ("Shiloh" or "Debtor"). 17-01458-JMM, Dkt. No. 1. The Order for relief was entered on December 1, 2017. 17-01458-JMM, Dkt. No. 44. At all relevant times, Nathan Pyles was president of Shiloh, Dkt. Nos. 41 and 42, and in that capacity solicited loans from private entities, including the Defendants in this adversary proceeding.

At issue in this adversary proceeding are four deeds of trust in which the Defendants are beneficiaries. These deeds of trust memorialize transfers by the Debtor of an interest in a parcel of real property located at 9212 Fish Pond Lane in Owyhee County, legally described as Lot 1, Block 1, of Gilgal Subdivision, according to the official plat recorded as Instrument Number 288692 (hereafter the "Property"). Dkt. No. 24.[2] Trustee

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–88.

[2] The Idaho Supreme Court has recently issued a decision that further addresses certain differences between a mortgage and a deed of trust regarding the interest that the creditor obtains in the subject real property. In *Bennett v. Bank of Eastern Oregon*, 167 Idaho 481, 484, 472 P.3d 1125,___ (2020), the Idaho Supreme Court  explained that Idaho is a "title passes state" as opposed to a "lien theory state" concerning the transfer that occurs when a deed of trust is used to secure a  lender's note. *Id.* at 483. "As such, a deed of trust does not create a lien because a lien is a charge upon property that transfers no title". *Id.* But it is still a transfer as the deed of trust passes title in the property from the borrower to the trustee, named in the instrument, as security for the lender's loan. As the deed of trust is an instrument that represents a transfer it is still avoidable under the bankruptcy code for the reasons stated hereafter. Any reference to a

MEMORANDUM OF DECISION – 3

and one of the Defendants, Triple B, entered into a stipulation resolving Trustee's claim and removing any interests held by Triple B against the property. Dkt. No. 28. However, the three remaining deeds of trust are still in dispute.

Each remaining Defendant allegedly holds a deed of trust interest encumbering the Property pursuant to at least one deed of trust. Hereafter, these deeds of trust will be individually referred to as the "Pipkin Deed of Trust," the "First Stock Boise Deed of Trust," the "Second Stock Boise Deed of Trust," and the "Quality Properties Deed of Trust," and collectively as the "Deeds of Trust." Trustee argues the Deeds of Trust are avoidable.

Each of the Deeds of Trust purport to secure a corresponding promissory note. These promissory notes will hereafter be individually referred to as the "Pipkin Note," the "First Stock Boise Note," the "Second Stock Boise Note," and the "Quality Properties Note," and collectively as the "Promissory Notes."

A.    <u>Pipkin Note and Deed of Trust</u>

Trustee and Pipkin submitted stipulated facts concerning the Pipkin Note and the Pipkin Deed of Trust:

> 6. On or around December 19, 2016, Pipkin loaned Shiloh $90,000.00 ("Pipkin Loan").
> 7. As indicated on the document "Direction of Investment Promissory Note", attached as Exhibit 100, Pipkin authorized that the $90,000.00 for the Pipkin Loan come from Pipkin IRA.

---

"lien" should not be construed as ignoring the decisions of the Idaho Supreme Court but rather a reference to the security created under Idaho law by virtue of the recordation of the deed of trust.

MEMORANDUM OF DECISION – 4

8. On December 27, 2016, Pyles executed a promissory note, attached as Exhibit 102 ("Pipkin Note"), wherein Shiloh promised to repay Pipkin IRA $90,000.00.

9. At all relevant times, Shiloh was the sole owner of a parcel of real property located at 9212 Fish Pond Lane, in Owyhee County, Idaho, legally described as Lot 1, Block 1 of Gilgal Subdivision, according to the official plat thereof, recorded as Instrument No. 288692, records of Owyhee County, Idaho (the "Property").

10. On December 21, 2016, Pyles executed a deed of trust, attached as Exhibit 103 ("Pipkin Deed of Trust"), wherein Shiloh, as Grantor, conveyed the Property to a title company trustee with Pipkin IRA as Beneficiary for the stated purpose of securing payment of the Pipkin IRA Note.

11. As indicated on Exhibit 103, Jayme L. Miller, a notary public for the state of Idaho and employee of Shiloh, was the notary on the Pipkin Deed of Trust and, as a notary, signed and stamped with her stamp the notary certificate section of the Pipkin Deed of Trust.

12. While the notary certificate on the Pipkin Deed of Trust indicates that Mr. Pyles acknowledged the document before Ms. Miller, Ms. Miller did not request that Mr. Pyles make an oral statement, or otherwise acknowledge the document, before or after he executed the documents and prior to adding her stamp and signature to the notary certificate.

13. Ms. Miller agrees that Mr. Pyles did not orally state his relationship to Shiloh when executing any Deed of Trust notarized by Ms. Miller, and that Mr. Pyles did not orally say anything regarding any Deed of Trust other than requesting Ms. Miller notarize the document.

14. The only action Ms. Miller took with regard to any Deed of Trust was that Ms. Miller witnessed Mr. Pyles' signature on the documents, and then stamped and signed the notary certificate.

15. Ms. Miller worked for Mr. Pyles and had seen the corporate certificate of Shiloh Management and knew him to be the President of the company at all times she was asked to notarize his signature on any Deed of Trust. Ms. Miller never notarized a document where Mr. Pyles was not physically present or where there were blanks in any of the documents.

16. As indicated on Exhibit 103, the Pipkin Deed of Trust was recorded with the Owyhee County, Idaho recorder on December 30, 2016 as Instrument No. 291613.

Dkt. No. 41.

MEMORANDUM OF DECISION − 5

B.    First Stock Boise Note and Deed of Trust

Trustee and Stock Boise entered stipulated facts concerning the First Stock Boise

Note and the First Stock Boise Deed of Trust:

17. On or around March 15, 2017, Stock Boise loaned Shiloh $50,000.00 ("First Stock Boise Loan").

18. On or around March 15, 2017, Pyles, as President of Shiloh, and as an individual, executed a promissory note, attached as Exhibit 104 ("First Stock Boise Note"), wherein Shiloh and Pyles promised to repay Stock Boise $50,000.00.

19. On March 20, 2017, Pyles executed a deed of trust, attached as Exhibit 105 ("First Stock Boise Deed of Trust"), wherein Shiloh, as Grantor, conveyed the Property to a title company trustee with Stock Boise as Beneficiary for the stated purpose of securing payment of the First Stock Boise Note.

20. As indicated on Exhibit 105, Lori A Fitzgerald, a notary public for the state of Idaho and employee of Pioneer Title Company, was the notary on the First Stock Boise Deed of Trust and, as a notary, signed and stamped with her stamp the notary certificate section of the First Stock Boise Deed of Trust.

21. While the notary certificate on the First Stock Boise Deed of Trust indicates that Mr. Pyles acknowledged the document before Ms. Fitzgerald, Ms. Fitzgerald did not request that Mr. Pyles make an oral statement, or otherwise acknowledge the document, before or after he executed the documents and prior to adding her stamp and signature to the notary certificate.

22. Ms. Fitzgerald agrees that Mr. Pyles did not orally state his relationship to Shiloh when executing any Deed of Trust notarized by Ms. Fitzgerald, and that Mr. Pyles did not orally say anything regarding any Deed of Trust other than requesting Ms. Fitzgerald notarize the document.

23. The only action Ms. Fitzgerald took with regard to any Deed of Trust was that Ms. Fitzgerald witnessed Mr. Pyles' signature on the documents, and then stamped and signed the notary certificate.

24. Ms. Fitzgerald never notarized a document where Mr. Pyles was not physically present or where there were blanks in any of the documents.

25. As indicated on Exhibit 105, the First Stock Boise Deed of Trust was recorded with the Owyhee County, Idaho recorder on March 21, 2017 as Instrument No. 292164.

Dkt. No. 41.

MEMORANDUM OF DECISION – 6

C.     Second Stock Boise Note and Deed of Trust

Trustee and Stock Boise entered stipulated facts concerning the Second Stock

Boise Note and the Second Stock Boise Deed of Trust:

26. On or around April 28, 2017, Stock Boise loaned Shiloh an additional $40,000.00 ("Second Stock Boise Loan").

27. On April 28, 2017, Pyles, as President of Shiloh, and as an individual, executed a promissory note, attached as Exhibit 107 ("Second Stock Boise Note"), wherein Shiloh and Pyles promised to repay Stock Boise $40,000.00.

28. On May 2, 2017, Pyles executed a deed of trust, attached as Exhibit 108 ("Second Stock Boise Deed of Trust"), wherein Shiloh, as Grantor, conveyed the Property to a trustee with Stock Boise as Beneficiary for the stated purpose of securing payment of the Second Stock Boise Note.

29. As indicated on Exhibit 108, Jayme L. Miller, a notary public for the state of Idaho, was the notary on the Second Stock Boise Deed of Trust and, as a notary, signed and stamped with her stamp the notary certificate section of the Second Stock Boise Deed of Trust.

30. While the notary certificate on the Second Stock Boise Deed of Trust indicates that Mr. Pyles acknowledged the document before Ms. Miller, Ms. Miller did not request that Mr. Pyles make an oral statement, or otherwise acknowledge the document, before or after he executed the documents and prior to adding her stamp and signature to the notary certificate.

31. As indicated on Exhibit 108, the Second Stock Boise Deed of Trust was recorded with the Owyhee County, Idaho recorder on May 2, 2017 as Instrument No. 292651.

32. The reasons for the differences between the dates on the promissory notes and deeds of trust signature and recording dates are unknown.

Dkt. No. 41.

D.     Quality Properties Note and Deed of Trust

Trustee and Quality Properties entered stipulated facts concerning the Quality

Properties Note and the Quality Properties Deed of Trust:

MEMORANDUM OF DECISION − 7

5. On or around December 30, 2015, Quality Properties loaned Shiloh $245,000.00 ("Quality Properties Loan").

6. As indicated on Shiloh's JPMorgan Chase bank statement, and on the copy of the cancelled cashier's check from Quality Properties to Shiloh, and on a deposit slip, all of which are attached as Exhibits 109, 110 and 111, the $245,000.00 for the Quality Properties Loan was deposited into Shiloh's bank account on January 5, 2016.

7. On or around December 30, 2015, Pyles executed, on behalf of Shiloh, a promissory note, attached as Exhibit 112 ("Quality Properties Note"), wherein Shiloh promised to repay Quality Properties $245,000.00.

8. On December 30, 2015, Pyles executed a deed of trust on behalf of Shiloh, attached as Exhibit 113 ("Quality Properties Deed of Trust"), for the stated purpose of securing payment of the Quality Properties Note.

9. As indicated on Exhibit 113, Andi Exon, a notary public for the state of Idaho employed (at the time) by Pioneer Title Company, was the notary on the Quality Properties Deed of Trust and, as a notary, signed and stamped with her stamp the notary certificate section of the Quality Properties Deed of Trust.

10. As indicated on Exhibit 113, the Quality Properties Deed of Trust was recorded with the Owyhee County, Idaho recorder on May 18, 2017 as Instrument No. 292777.

11. The legal description for the Property included in the Quality Properties Deed of Trust recorded document includes the following: (a) a tax parcel number – "RP 0056650010010 A", (b) a street address & zip code– "9212 Fish Pond Lane 83641", (c) a lot & block subdivision reference to "Lot 1 Block 1, Gilgal Sub 21 1N 3W"; and (d) the county & state – "County of Owyhee, State of Idaho."

12. A true and correct copy of the recorded plat of the Gilgal Subdivision in Owyhee County, Idaho, is shown as Exhibit 200.

13. As indicated on Exhibit 200, the Gilgal Subdivision plat was recorded with the Owyhee County, Idaho, recorder on January 22, 2016 as Instrument No. 288692.

Dkt. No. 42.

In addition to the stipulated facts, Andi Exon, who during the relevant time was employed by Pioneer Title Company, testified before the Court about the general process of notarizing documents for Mr. Pyles, as well as specifically concerning the notarization of the Quality Properties Deed of Trust. She testified that generally Mr. Pyles would

MEMORANDUM OF DECISION – 8

come in the office, ask that she notarize a document, she would take a copy of his

driver's license, and then they would sit down to notarize the document. She further

stated that Mr. Pyles did nothing to acknowledge to her that he, on behalf of Shiloh, had

executed the document. Her testimony was clear that she believed acknowledging a

document entailed only taking a copy of the acknowledger's driver's license and having

him or her sign the document. Finally, she testified that this is the process she used with

regard to the Quality Properties Deed of Trust.

     Mr. Pyles also testified. Although he could not remember particulars about the

Quality Properties Deed of Trust, he testified about the process he generally followed if

he needed something notarized. He would come in the office and inform the receptionist

that he needed to have someone notarize a document he brought in himself. A notary

would come out, watch him sign it, and then fill out the notary block and affix the notary

stamp. He testified that he was unaware of Ms. Exon doing anything other than

witnessing the signature. Mr. Pyles, when asked if he had read the words on the page

prior to signing and having it notarized, Mr. Pyles replied, "For the most part."

     Mr. Pyles drafted the Quality Properties Deed of Trust. He used a form template

for all of his deeds of trust, including this one. He testified that he did not believe that

Exhibit A was attached to the Quality Properties Deed of Trust at the time he executed

the document.

MEMORANDUM OF DECISION – 9

*Analysis and Disposition*

Trustee commenced this adversary proceeding seeking to avoid all of the Deeds of Trust pursuant to §§ 544, 550, 551, 558, as well as applicable Idaho state law. Trustee advances several theories to support avoidance. First, Trustee argues that all of the deeds of trust at issue may be avoided pursuant to § 544 because they are unperfected for lack of a valid notary acknowledgement. Second, Trustee contends that the Pipkin Deed of Trust, the First Stock Boise Deed of Trust, and the Second Stock Boise Deed of Trust secure promissory notes which do not exist, and as such, the Deeds of Trust are avoidable pursuant to §§ 544, 550, and 551. Finally, Trustee seeks to avoid the Quality Properties Deed of Trust because it fails to comply with applicable Idaho state law as it lacks a valid legal description of the Property. As a result of these alleged defects, Trustee seeks a determination that all of the Deeds of Trust at issue are invalid as transferred interests against the Property. The Court will consider each of these arguments.

A.    Avoidance Due to Lack of a Notary Acknowledgement

Trustee argues that Mr. Pyles did not actually acknowledge his signature to the notaries for each deed of trust, and, as such, the Deeds of Trust were improperly recorded and avoidable pursuant to § 544(a). Dkt No. 24. In a recently issued decision in a parallel adversary proceeding, this Court addressed the trustee's avoidance powers as follows:

> The Bankruptcy Code provides bankruptcy trustees with broad powers to assist them in recovering and administering debtors' assets to benefit unsecured creditors in bankruptcy cases. Among these powers are those designed to allow the trustee to recover, or "avoid" transfers made by a debtor prior to filing for bankruptcy. One of these avoiding powers is the so-called "strong-arm power" found in § 544(a). Pursuant to § 544(a)(3), a

MEMORANDUM OF DECISION – 10

bankruptcy trustee has the power to avoid any transfer that a hypothetical bona fide purchaser for value could have avoided under the law of the state in which the real property is located. *Chase Manhattan Bank, USA, N.A. v. Taxel (In re Deuel)*, 594 F.3d 1073, 1076 (9th Cir. 2010); *Rainsdon v. Mullen (In re Mullen)*, 402 B.R. 353, 356 (Bankr. D. Idaho 2008).

*Hillen v. Lucille Borses Family Trust (In re Shiloh Mgmt. Servs., Inc.)*, No. AP 19-06003-JMM, 2020 WL 6038301, at *6 (Bankr. D. Idaho June 17, 2020) (quoting *Hillen v. Preston Roth IRA, LLC (In re Shiloh Mgmt. Servs., Inc.)*, No. 18-06002-JMM, 2018 WL 3025279, at 6–7 (Bankr. D. Idaho June 15, 2018), *aff'd*, 788 F. App'x 500 (9th Cir. 2019). In the instant case, Trustee contends that because there were no acknowledgments taken, the Deeds of Trust should not have been recorded, and as such, are unperfected.

This Court recently addressed this very issue in the *Lucille Borses* case. 2020 WL 603830 In that decision, this Court noted the lack of Idaho case law directly on point,[3] but found guidance in the case law regarding the form of the acknowledgement.

"In Idaho a certificate of acknowledgment, complete and regular on its face, raises a presumption in favor of the truth of every fact recited therein, and the burden of proving a state of facts which will overcome the probative force of the certificate is upon the party assailing it." *Credit Bureau of Preston v. Sleight*, 92 Idaho 210, 215, 440 P.2d 143, 148

---

[3] "[W]hen a decision turns on applicable state law, and the highest state court has not adjudicated the issue, this Court must determine what decision the highest court would reach if faced with the issue." *Elsaesser v. Raeon (In re Goldberg)*, 235 B.R. 476, 485 (Bankr. D. Idaho 1999) (quoting *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir. 1997)). Thus, this Court concludes that, if faced with the exact facts presented here, the Idaho appellate courts would reach the same conclusion as this Court with respect to the notary acknowledgement issue.

MEMORANDUM OF DECISION – 11

(Idaho 1968).[4] The burden on the party challenging the certificate of acknowledgement must be met by clear and convincing evidence. *Id.* Clear and convincing evidence is "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain." *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (Idaho 2006) (quoting Black's Law Dictionary 577 (7th ed. 1999)). "[T]he uncorroborated testimony of the party acknowledging the instrument is insufficient to overcome the force of the certificate." *Credit Bureau of Preston v. Sleight*, 92 Idaho at 215, 440 P.2d at 148 (citing *Clegg v. Eustace*, 40 Idaho 651, 237 P. 438 (Idaho 1925)).

Idaho Code § 55-805[5] provides:

> Before an instrument may be recorded, unless it is otherwise expressly provided, its execution must be acknowledged by the person executing it, or if executed by a corporation, by its president or vice president, or secretary or assistant secretary, or other person executing the same on behalf of the corporation . . . .

An instrument recorded without an acknowledgment or with a defective acknowledgment is not entitled to be recorded and "cannot impart constructive notice." *Anderson Land Co. v. Small Bus. Admin. (In re Big River Grain, Inc.)*, 718 F.2d 968, 970 (9th Cir. 1983) (citing *Credit Bureau of Preston v. Sleight*, 92 Idaho at 215, 440 P.2d at 148). "Thus, when Trustee steps into the shoes of a hypothetical bona fide purchaser for

---

[4] Although the parties' stipulated facts use the term "notary certificate," the Court will use the term "certificate of acknowledgment," which is the language used by Idaho courts.

[5] The Idaho notary statute was amended effective July 2017. This statutory language is present in both the pre-July 2017 statute as well as the amended statute. The acknowledgements at issue here are analyzed under the pre-July 2017 amendments.

value, he may avoid those security interests created." *Cortez v. American Wheel, Inc. (In re Cortez)*, 191 B.R. 174, 178 (9th Cir. BAP 1995) ("An unrecorded, thus unperfected, deed of trust is subject to avoidance by the bankruptcy trustee as a hypothetical lien creditor, pursuant to § 544."). As such, if the trust deeds at issue here are not acknowledged, or if the acknowledgments are not valid, they should not have been recorded and are avoidable transfers. *See Preston Roth*, 2018 WL 3025279, at *3 (citing *Matter of Jacobsen*, 30 B.R. 965, 968 (Bankr. D. Idaho 1983)).

The Idaho Supreme Court has previously addressed the validity of acknowledgements, observing that:

> In Idaho, as in most states, there exists a presumption of regularity as to the official acts performed by public officers. A notary public is a bonded public officer appointed by the Governor. Notaries are empowered to take acknowledgments and to give certificates of proof thereof. We begin with a presumption that the deed of trust was validly acknowledged.

*Benjamin Franklin Sav. & Loan Ass'n. v. New Concept Realty & Dev., Inc. (In re New Concept Realty & Dev., Inc.)*, 107 Idaho 711, 712 692 P.2d 355, 356 (Idaho 1984) (internal citations omitted). This Court begins its analysis under this presumption.

The Idaho Code provisions on acknowledgement were amended effective July 2017. *Preston Roth*, 2018 WL 3025279, at *n. 2. All the Deeds of Trust at issue here were notarized prior to that date. Thus, the Court will measure the adequacy of the acknowledgements under the former statutes. Idaho Code § 51-129.

At the time each of the Deeds of Trust were acknowledged, Idaho Code § 55-707 stated:

MEMORANDUM OF DECISION − 13

Requisites of acknowledgment.—The acknowledgment of an instrument
must not be taken, unless the officer taking it knows, or has satisfactory
evidence from a credible source, that the person making such
acknowledgment is the individual who is described in, and who executed
the instrument; or, if executed by a corporation, that the person making
such acknowledgment is the president or vice president or secretary or
assistant secretary of such corporation[.]

Idaho Code § 55-707 (repealed 2017). Before an instrument may be recorded, it must be

properly acknowledged by the person executing it. Idaho Code § 55-805. If it is not

properly acknowledged, it does not impart notice, even if it was actually erroneously

recorded.[6] Here, if the Deeds of Trust were not acknowledged, they do not impart notice,

---

[6] The logic is a bit puzzling. Idaho Code § 55-805 requires a deed to be acknowledged prior to recording.
Yet the purpose of recording, according to Idaho case law, is to impart notice to others. *See Anderson
Land Co. v. Small Bus. Admin. (In re Big River Grain, Inc.)*, 718 F.2d at 970. Without notice, the
recording is void. However, in many cases, as with those at issue here, the conveyances *were actually*
recorded despite the invalid acknowledgement. Thus, parties *were* put on notice (the very purpose of
recording) despite the invalid acknowledgement. Yet, Idaho case law still deems the deed invalid if the
acknowledgement is incorrect for lack of proper notice. This was recognized by Idaho Supreme Court
Justice Stephen Bistline in his concurrence in *Benjamin Franklin Sav. & Loan Ass'n. v. New Concept
Realty & Dev., Inc. (In re New Concept Realty & Dev., Inc.)*, 107 Idaho at 714, 692 P.2d at 358. He
stated:

The argument as I understand it . . . is that because of the alleged faulty
acknowledgement, [the conveyance] was not entitled to be recorded—from which by
application of a fiction it is then said in the eyes of the law not to have been recorded. It
is I.C. § 55–805 which requires acknowledgement by the person executing a document as
a prerequisite to recording. It does not require a perfect acknowledgement. It does not
declare that a less than perfect acknowledgement nullifies the constructive notice which
flows from recording. This Court over 70 years ago in *Harris v. Reed*, 21 Idaho 364, 121
P. 780 (1912), accepting authority from other jurisdictions, held that "The recording of an
instrument which is not entitled under the statute to be recorded cannot import
constructive notice to anyone." 21 Idaho at 370, 121 P. at 782. Such to my mind ignored
reality. What has been recorded has been recorded; what is seen of record is seen of
record.

107 Idaho at 714, 692 P.2d at 358. However, while the arguments made in the concurrence contain
important considerations, this Court will follow the current Idaho precedent.

MEMORANDUM OF DECISION − 14

and Trustee can avoid them. So, naturally, the Court must determine what the term

"acknowledge" actually means. The Idaho Supreme Court's canons of statutory

construction is clear:

> Interpretation of a statute begins with an examination of the statute's literal
> words. Where the language of a statute is plain and unambiguous, courts
> give effect to the statute as written, without engaging in statutory
> construction. Only where the language is ambiguous will this [c]ourt look
> to rules of construction for guidance and consider the reasonableness of
> proposed interpretations.

*Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 398, 224 P.3d 458, 465 (2008).

If the statute is not ambiguous, courts will simply follow the law as written. *In re*

*Adoption of Doe*, 156 Idaho 345, 349, 326 P.3d 347, 351 (2014) (quoting *City of*

*Sandpoint v. Sandpoint Indep. Highway Dist.*, 139 Idaho 65, 69, 72 P.3d 905, 909

(2003)). "[A] statute 'is ambiguous where reasonable minds might differ or be uncertain

as to its meaning.'" *Id.* (quoting *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152

Idaho 927, 930, 277 P.3d 374, 377 (2012)). "If the statute is ambiguous, then it must be

construed to mean what the legislature intended for it to mean." *Id.* (quoting *City of*

*Sandpoint*, 139 Idaho at 69, 72 P.3d at 909). "Legislative intent is determined by

examining 'the literal words of the statute, . . . the reasonableness of proposed

constructions, the public policy behind the statute, and its legislative history.'" *Id.*

(quoting *City of Sandpoint*, 139 Idaho at 69, 72 P.3d at 909).

Here, the Court finds that the term "acknowledge" as used in the pre-July 2017

notary statutes is not plain and unambiguous. The term "acknowledge" is vague such that

reasonable minds might differ or be uncertain as to its meaning. It could mean the party

MEMORANDUM OF DECISION – 15

acknowledging the document must verbally state that they acknowledge the documents before the certificate of acknowledgement is attached. It could also mean some form of nonverbal conduct, such as physically taking the form to the notary and asking the notary to notarize the document. The term has several different possible meanings, as set forth by the parties' arguments in this case, and the definitions offered by the opposing parties are not unreasonable. Thus, the Court must next determine the Idaho legislature's intent by examining the statutory text, the reasonableness of proposed constructions, the public policy behind the statute, its legislative history, as well as the interpretation of the statute by courts and public agencies.

     *1.*    *Statutory text*

The term "acknowledgement" is used in various Idaho statutes. As stated above, Idaho Code § 55-805, which provides the same language in both the pre- and post-July 2017 amendments, states:

> Before an instrument may be recorded, unless it is otherwise expressly provided, its execution must be *acknowledged* by the person executing it, or if executed by a corporation, by its president or vice president, or secretary or assistant secretary, or other person executing the same on behalf of the corporation . . . .

Idaho Code § 55-805 (emphasis added). At the time the Deeds of Trust were acknowledged, Idaho Code § 55-707 provided:

> Requisites of acknowledgment.—*The acknowledgment of an instrument must not be taken*, unless the officer taking it knows, or has satisfactory evidence from a credible source, that the person *making such acknowledgment* is the individual who is described in, and who executed the instrument; or, if executed by a corporation, that the person making

MEMORANDUM OF DECISION − 16

such acknowledgment is the president or vice president or secretary or
assistant secretary of such corporation[.]

Idaho Code § 55-707 (repealed 2017) (emphasis added). At the time the Deeds of Trust

were executed, Idaho Code § 55-711 prescribed a corporate acknowledgement and

required it to be in substantially the following form:

State of Idaho, County of _____, on this _____day of _____, in the
year _____, before me (here insert the name and quality of the officer),
personally appeared _____ known to me (or proved to me on the oath of
_____) to be president, or vice president, or secretary, or assistant
secretary, of the corporation that executed the instrument or the person who
executed the instrument on behalf of said corporation, *and acknowledged* to
me that such corporation executed the same.

*Anderson Land Co. v. Small Bus. Admin. (In re Big River Grain, Inc.)*, 718 F.2d at 969

(citing Idaho Code § 55-711) (emphasis added). The prescribed corporate

acknowledgement form does not state that the party acknowledging the form "hereby

acknowledges" the document by way of the certificate of acknowledgement; rather, it

specifically states that the party acknowledging the document appeared before the notary

and, before the certificate of acknowledgement was executed by the notary,

acknowledged that they had executed the document.

After consideration of the various statutes utilizing the term "acknowledgement,"

this Court has observed that the signature of the authorized officer, on its own, is not the

acknowledgement. *Lucille Borses*, 2020 WL 6038301, at *9 ("The statutes . . . view and

treat the acknowledgement as separate from the signature and cannot be conflated with

the signing and identifying portions of the process.").

MEMORANDUM OF DECISION − 17

### 2.    *Reasonableness of proposed constructions*

There are two possible proposed constructions of the statute. The first construction treats the acknowledgement separate from the act of identifying the executor and signing the document. The second construction treats the acknowledgement as being part of the identifying and signing portions. While neither construction is necessarily outright unreasonable, the Court finds the first construction to be more reasonable than the second. The second interpretation would lead to the term "acknowledgement" being a superfluous term in all of the Idaho statutes mentioning that very act. While the statutes require the act of acknowledging a document before it can be notarized and recorded, the second interpretation simply lumps these actions together. It is a fundamental canon of statutory construction that a court should not read statutes in such a way that would render certain terms superfluous. *Nelson v. Evans*, 166 Idaho 815, 464 P.3d 301, 306 (2020). In fact, the form proscribed by the Idaho legislature requires two distinct acts: 1) the appearance of the officer known to the notary or proved to be the officer, and 2) acknowledgement. Finally, the Court is unpersuaded by the Defendant's arguments that neither they, nor their respective law firms, have ever required something more than identification or signing the document before the document is notarized. Regardless of their practice, the Court's charge is to determine the statutory requirements for a proper acknowledgement Accordingly, the Court finds the more reasonable approach to be that adopted by this Court in *Lucille Borses*: the acknowledgement act is separate and distinct from the identification and signature portions of notarization.

MEMORANDUM OF DECISION − 18

*3.    Public policy behind the statute*

The Idaho Supreme Court has previously stated:

> In taking acknowledgments, a notary properly discharges his duty only when the persons acknowledging execution personally appear and the notary has satisfactory evidence, based either on his personal knowledge or on the oath or affirmation of a credible witness, that the acknowledgers are who they say they are and did what they say they did.

*Farm Bureau Fin. Co. v. Carney*, 100 Idaho 745, 750, 605 P.2d 509, 514 (1980). The

Idaho Supreme court continued:

> [T]he manifest intent of the legislature in requiring a notary public to execute a certificate of acknowledgment is to provide protection against the recording of false instruments. The Sine qua non of this statutory requirement is the involvement of the notary, a public officer in a position of public trust.
> . . .
> A notary betrays the public trust when he signs a certificate of acknowledgment with knowledge that the blanks will be filled in later or when he signs a completed certificate of acknowledgment but without requiring the personal appearance of the acknowledgers. Whether the certificate blanks are empty or full is not the significant fact. *The key to the statutory safeguard is the integrity of the notary in the proper discharge of notarial duties by requiring the signatories to personally appear before him and acknowledge that they did in fact execute the document.*

*Id.* (emphasis added).

The Idaho legislature intended that a notary require the person signing a document

to acknowledge that they did in fact execute the document. In so holding, this Court is not

specifying any particular act that a party must do when completing a notary

acknowledgement. Rather, the Court simply concludes that an act above and beyond the

signature is required for the person to properly acknowledge a document before it is

MEMORANDUM OF DECISION – 19

notarized. This holding is in keeping with the Idaho legislature's intent to provide

protection against the recording of false instruments: Idaho law specifically requires an

acknowledgement to be taken before a document is notarized, and the document must be

notarized before it is recorded. Thus, the acknowledgement is an essential part of this

protection.

> 4.    *Legislative History*

The Court was unable to locate a statutory definition of "acknowledgement" prior

to the July 2017 amendment, and no party has directed the Court to one. However,

Black's Law Dictionary defines "acknowledgement" as "A formal declaration made in

the presence of an authorized officer, such as a notary public, by someone who signs a

document and confirms that the signature is authentic." Black's Law Dictionary (11th ed.

2019).[7]

> 5.    *Interpretation of the Statute*

There are two bodies that have interpreted the statute–the Idaho Secretary of State

and the Courts. The Secretary of State publishes the Idaho Notary Public Handbook,

including versions both before and after the 2017 amendments. The version published

---

[7] The July 2017 amendments include a definition of the term:

> "Acknowledgment" means a *declaration* by an individual before a notarial officer that the individual has signed a record for the purpose stated in the record and, if the record is signed in a representative capacity, that the individual signed the record with proper authority and signed it as the act of the individual or entity identified in the record.

Idaho Code § 51-102(1) (emphasis added).

MEMORANDUM OF DECISION – 20

before the July 2017 amendments is instructive, as it suggests that the signature itself is

not the acknowledgement. LAWRENCE DENNEY, NOTARY PUBLIC HANDBOOK (July 1,

2015), https://www.nationalnotary.org/file%20library/nna/state%20handbooks/idaho-

notary-handbook-2016.pdf. In a section titled, "Taking Acknowledgements," the

handbook prescribes the requirements when taking acknowledgements. It provides:

> The *acknowledgment of an instrument must not be taken*, unless the officer
> taking it knows, or has satisfactory evidence from a credible source, that the
> person *making such acknowledgment* is the individual who is described in,
> and who executed, the instrument; or, if executed by a corporation, that the
> person *making such acknowledgment* is the president or vice president or
> secretary or assistant secretary of such corporation . . . or if executed in a
> partnership name, that the person *making the acknowledgment* is the partner
> or one (1) of the partners subscribing the partnership name to such
> instrument; or, if executed by a limited liability company, that the person
> *making such acknowledgment* is a manager or member of such limited
> liability company or other person who executed on its behalf.

*Id.* at 19 (emphasis added).

Following the 2017 amendments, the Idaho Notary Public Handbook was revised.

LAWRENCE DENNEY, NOTARY PUBLIC HANDBOOK (Revised October 2018),

https://sos.idaho.gov/Notary/Idaho_Notary_Handbook.pdf.[8] The revised handbook

---

[8] Idaho Code § 51-127 permits the Idaho Secretary of State to "adopt rules to implement" the Revised
Uniform Law on Notarial Acts. By statute, the rules may include but are not limited to the following:

> (a) Prescribing the manner of performing notarial acts regarding tangible and
> electronic records;
> (b) Including provisions to ensure that any change to or tampering with a record
> bearing a certificate of a notarial act is self-evident;
> (c) Including provisions to ensure integrity in the creation, transmittal, storage or
> authentication of electronic records or signatures;
> (d) Prescribing the process of granting, renewing, conditioning, denying,
> suspending or revoking a notary public commission and assuring the
> trustworthiness of an individual holding a commission as notary public;

MEMORANDUM OF DECISION – 21

clarifies that the signature itself is not the acknowledgement. In a section titled, "Taking

Acknowledgements," the handbook prescribes the actions that must be performed when

taking acknowledgements. It provides:

> In *taking an acknowledgment*, the notary must do the following:
>
> > • Require the personal appearance of the signer
> > • Review the document to determine the type of document and type of notarial act required
> > • Identify the signer as the person who is supposed to sign the document
>
> Verify that the signature on the document is the signer's, either by watching them sign the document, or if it has already been signed, by comparing the signature on the document to one on the signer's ID and the signature made by the signer in the notary's journal[.]
>
> *Have the signer verbally acknowledge that the signature is his or hers.* Complete the notarial certificate[.]

*Id.* at 11 (emphasis added). As such, the handbook now formally lists the

acknowledgment as a separate step.[9]

_____

> (e) Including provisions to prevent fraud or mistake in the performance of notarial acts

Idaho Code § 51-127.

[9] Although Idaho Code § 51-115(1), added in 2017, requires that a notarial act be evidenced by a certificate and that the certificate "[b]e executed contemporaneously with the performance of the notarial act," Idaho Code § 51-115(1)(a), this Court can locate no legislative history indicating the Idaho legislature's intent regarding the meaning of the term "acknowledgement" before the July 2017 amendments.

MEMORANDUM OF DECISION − 22

The second source of statutory interpretation is the case law addressing the use of the term "acknowledgement." As stated in *Lucille Borses*, 2020 WL 6038301, at *9, the case law is in accord with this Court's interpretation. *See Preston Roth*, 2018 WL 3025279, at *3 (citing *Matter of Jacobsen*, 30 B.R. 965 at 968 ("As such, if the trust deeds at issue here *are not acknowledged*, or if the acknowledgments are not valid, they should not have been recorded and are avoidable by Trustee.") (emphasis added); *Benjamin Franklin Sav. & Loan Ass'n. v. New Concept Realty & Dev., Inc. (In re New Concept Realty & Dev., Inc.)*, 107 Idaho at 712, 692 P.2d at 356 ("In *taking an acknowledgment* a notary properly discharges his duty only when the persons *executing the acknowledgment* personally appear before him, and when the notary personally knows, or has proven to him, that those individuals are the same individuals who are described in, and who executed, the instrument . . . Notaries are *empowered to take acknowledgments* and to give certificates of proof thereof.") (emphasis added); *Farm Bureau Fin. Co. v. Carney*, 100 Idaho at 750, 605 P.2d at 514 ("The key to the statutory safeguard is the integrity of the notary in the proper discharge of notarial duties by requiring the signatories to personally appear before him and *acknowledge that they did in fact execute the document*. . . . In *taking acknowledgments*, a notary properly discharges his duty only when the persons acknowledging execution personally appear and the notary has satisfactory evidence . . . that the acknowledgers are who they say they are and *did what they say they did*.") (emphasis added). This Court finds that the case law

MEMORANDUM OF DECISION − 23

supports its interpretation that the acknowledgement is separate and distinct from the signature and identification portions of the procedure.

### 6.    Summary

The Court finds that the term "acknowledgement" as used in the pre-July 2017 amended statutes is ambiguous. Its plain, unambiguous meaning cannot be ascertained by looking at the text of the statute itself and reasonable minds might differ as to its meaning. Accordingly, after examining the statutory text, the reasonableness of proposed constructions, the public policy behind the statute, the legislative history, and the interpretations of the statute, the Court concludes that the signature, on its own, is not the acknowledgement. *See also Lucille Borses*, 2020 WL 6038301, at *10. With this in mind, the Court will examine the adequacy of the certificates of acknowledgement.

### a.    Pipkin Deed of Trust

With regard to the Pipkin Deed of Trust, the relevant stipulated facts are as follows:

> 12. While the notary certificate on the Pipkin Deed of Trust indicates that Mr. Pyles acknowledged the document before Ms. Miller, Ms. Miller did not request that Mr. Pyles make an oral statement, or otherwise acknowledge the document, before or after he executed the documents and prior to adding her stamp and signature to the notary certificate.
> 13. Ms. Miller agrees that Mr. Pyles did not orally state his relationship to Shiloh when executing any Deed of Trust notarized by Ms. Miller, and that Mr. Pyles did not orally say anything regarding any Deed of Trust other than requesting Ms. Miller notarize the document.
> 14. The only action Ms. Miller took with regard to any Deed of Trust was that Ms. Miller witnessed Mr. Pyles' signature on the documents, and then stamped and signed the notary certificate.

MEMORANDUM OF DECISION – 24

> 15. Ms. Miller worked for Mr. Pyles and had seen the corporate certificate of Shiloh Management and knew him to be the President of the company at all times she was asked to notarize his signature on any Deed of Trust. Ms. Miller never notarized a document where Mr. Pyles was not physically present or where there were blanks in any of the documents.

Dkt. No. 41.

This is precisely what occurred in *Lucille Borses.* In that case, the text of the notarized document itself indicated that Mr. Pyles appeared before the notary and acknowledged that he had executed the document. *Lucille Borses,* 2020 WL 6038301, at 9. However, the notary's testimony conflicted with that statement contained within the notary block, as she had testified that Mr. Pyles had not, in fact, acknowledged the document before the notary. *Id*. This Court found that Trustee had overcome his burden by clear and convincing evidence that no acknowledgement had actually been taken and the deed of trust was, therefore, improperly recorded. *Id*.

Here, the parties stipulated that, although the notary block on the deed of trust states otherwise, there was no actual acknowledgement taken. "Although the uncorroborated testimony of the party acknowledging the instrument is insufficient to overcome the force of the certificate," *Lucille Borses*, 2020 WL 6038301, at 9, such is not the case here. The parties clearly stipulated that no acknowledgement was taken. Recall, the burden on the party challenging the certificate of acknowledgement must be met by clear and convincing evidence. *Credit Bureau of Preston v. Sleight*, 92 Idaho at 215, 440 P.2d at 148 (Idaho 1968). Having already concluded that the acknowledgement requires something in the presence of the notary beyond the signature itself, it is clear to

MEMORANDUM OF DECISION – 25

the Court that no acknowledgement was taken when the parties stipulate to such.
Accordingly, Trustee has satisfied his burden by clear and convincing evidence that the
Pipkin Deed of Trust was not properly notarized due to lack of an actual
acknowledgement by Mr. Pyles to Ms. Miller.

"[I]f the trust deeds . . . are not acknowledged, or if the acknowledgments are not
valid, they should not have been recorded and are avoidable by Trustee [under § 544(a)]."
*Preston Roth*, 2018 WL 3025279, at *3 (citing *Matter of Jacobsen*, 30 B.R. at 968). For
the reasons stated above, the Pipkin Deed of Trust at issue here was not properly
acknowledged. As such, it should not have been recorded and, thus, is unperfected.
Accordingly, the interest in the Property created by recordation of the Pipkin Deed of
Trust is avoidable by Trustee.

> b.     *First Stock Boise Deed of Trust*

With regard to the First Stock Boise Deed of Trust, the relevant stipulated facts are
as follows:

> 21. While the notary certificate on the First Stock Boise Deed of
> Trust indicates that Mr. Pyles acknowledged the document before
> Ms. Fitzgerald, Ms. Fitzgerald did not request that Mr. Pyles make
> an oral statement, or otherwise acknowledge the document, before or
> after he executed the documents and prior to adding her stamp and
> signature to the notary certificate.
> 22. Ms. Fitzgerald agrees that Mr. Pyles did not orally state his
> relationship to Shiloh when executing any Deed of Trust notarized
> by Ms. Fitzgerald, and that Mr. Pyles did not orally say anything
> regarding any Deed of Trust other than requesting Ms. Fitzgerald
> notarize the document.
> 23. The only action Ms. Fitzgerald took with regard to any Deed of
> Trust was that Ms. Fitzgerald witnessed Mr. Pyles' signature on the
> documents, and then stamped and signed the notary certificate.

MEMORANDUM OF DECISION – 26

> 24. Ms. Fitzgerald never notarized a document where Mr. Pyles was not physically present or where there were blanks in any of the documents.

Dkt. No. 41.

This Deed of Trust also avoidable by Trustee for the same reasons the Pipkin Deed of Trust is avoidable. The parties stipulated that no acknowledgement was taken by Ms. Fitzgerald, and thus Trustee has satisfied his burden by clear and convincing evidence that the First Stock Boise Deed of Trust was not properly notarized due to lack of an actual acknowledgement by Mr. Pyles to Ms. Fitzgerald. As a result, the interest in the Property created by recordation of the First Stock Boise Deed of Trust is avoidable by Trustee.

> c.    *Second Stock Boise Deed of Trust*

With regard to the Second Stock Boise Deed of Trust, the relevant stipulated facts are as follows:

> While the notary certificate on the Second Stock Boise Deed of Trust indicates that Mr. Pyles acknowledged the document before Ms. Miller, Ms. Miller did not request that Mr. Pyles make an oral statement, or otherwise acknowledge the document, before or after he executed the documents and prior to adding her stamp and signature to the notary certificate.

Dkt. No. 41.

There are no facts available here to help the Defendant. Although the notary block on the Second Stock Boise Deed of Trust states otherwise, the parties stipulated that no acknowledgement was taken by Ms. Miller. Accordingly, Trustee has satisfied his burden by clear and convincing evidence that the Second Stock Boise Deed of Trust was not

MEMORANDUM OF DECISION – 27

properly notarized due to lack of an actual acknowledgement, and therefore the interest in

the Property created by recording Second Stock Boise Deed of Trust is likewise

avoidable by Trustee.

> d.    *Quality Properties Deed of Trust*

With regard to the Quality Properties Deed of Trust, the relevant stipulated facts

are as follows:

> On December 30, 2015, Pyles executed a deed of trust on behalf of Shiloh,
> attached as Exhibit 113 ("Quality Properties Deed of Trust"), for the stated
> purpose of securing payment of the Quality Properties Note.
> 9. As indicated on Exhibit 113, Andi Exon, a notary public for the state of
> Idaho employed (at the time) by Pioneer Title Company, was the notary on
> the Quality Properties Deed of Trust and, as a notary, signed and stamped
> with her stamp the notary certificate section of the Quality Properties Deed
> of Trust.

Dkt. No. 42. Unlike the aforementioned deeds of trust, the parties did not stipulate that no

acknowledgement was actually taken, or that the language of the notary block conflicted

with the events that actually occurred during notarization.

Andi Exon testified before the Court regarding her familiarity with Mr. Pyles, as

she had notarized numerous documents for both Mr. Pyles and Shiloh prior to notarizing

the Quality Properties Deed of Trust. She related to the Court what the typical

notarization process entailed. She stated that Mr. Pyles would come in, ask that she

notarize a document, she would take a copy of his driver's license and then they would sit

down to notarize the document. When asked about what Mr. Pyles did to acknowledge to

her that he, on behalf of Shiloh, had executed the document, Ms. Exon responded, "Uh,

in this particular instance, nothing." She testified that Mr. Pyles did nothing more in front

MEMORANDUM OF DECISION – 28

of her other than sign the Quality Properties Deed of Trust. She was clear that, in her opinion, "acknowledgement" required only that she take a copy of the executor's driver's license and then watch the individual sign the document. Mr. Pyles similarly testified that Ms. Exon did not require anything more of him than his signature.

The testimony of both Ms. Exon and Mr. Pyles contradict the notary block text. Although the notary block states the Mr. Pyles appeared before Ms. Exon and acknowledged the document, both Ms. Exon and Mr. Pyles testified that no such acknowledgement actually occurred. The Court is not persuaded by any argument that, because Mr. Pyles brought the document and the words to the notary, he had acknowledged the document in writing. To accept this argument would be to subvert the role of the notary and disturb this position of trust. *See Farm Bureau Fin. Co. v. Carney*, 100 Idaho at 750, 605 P.2d at 514 ("The key to the statutory safeguard is the integrity of the notary in the proper discharge of notarial duties by requiring the signatories to personally appear before him and acknowledge that they did in fact execute the document.").

No acknowledgement in the presence of the notary occurred here. When asked if anything above and beyond a signature was required, both Ms. Exon and Mr. Pyles testified that no such acknowledgement occurred. Accordingly, Trustee has satisfied his burden by clear and convincing evidence that the Quality Properties Deed of Trust was not properly notarized due to lack of an actual acknowledgement by Mr. Pyles to Ms. Miller, and the interest in Property created by recording the Second Stock Boise Deed of

MEMORANDUM OF DECISION − 29

Trust is avoidable by Trustee. *See Preston Roth*, 2018 WL 3025279, at *3 ("[I]f the trust deeds . . . are not acknowledged, or if the acknowledgments are not valid, they should not have been recorded and are avoidable by Trustee [under § 544(a)].").

B.    <u>Avoidance because the Deeds of Trust do not sufficiently identify the underlying promissory notes</u>

Next, the Court turns to another issue previously addressed in *Lucille Borses,* namely, whether the Deeds of Trust sufficiently identify the obligations they purport to secure. Trustee argues that the Pipkin Deed of Trust, the First Stock Boise Deed of Trust, and the Second Stock Boise Deed of Trust are invalid because they purportedly secure obligations which do not exist. Each Deed of Trust purports to secure a promissory note executed "of even date herewith." The phrase "of even date" "is sometimes used in one instrument to refer to another instrument with the same date, esp. when both relate to the same transaction (as a deed and a mortgage)." Black's Law Dictionary (11th ed. 2019). Trustee argues that, because the Deeds of Trust purport to secure obligations that were created the same date the Deeds of Trust were dated, and no promissory notes were actually executed on those dates, the Deeds of Trust are invalid and subject to avoidance.

As this Court previously stated in *Lucille Borses*, there is no Idaho case law on point.[10] In that case, this Court considered decisions from other jurisdictions, particularly North Carolina. That same analysis and case law is applicable here.

---

[10] "[W]hen a decision turns on applicable state law, and the highest state court has not adjudicated the issue, this Court must determine what decision the highest court would reach if faced with the issue." *Elsaesser v. Raeon (In re Goldberg)*, 235 B.R. 476, 485 (Bankr. D. Idaho 1999) (quoting *Capital Dev.*

MEMORANDUM OF DECISION − 30

A North Carolina bankruptcy court rejected the enforceability of a lien based upon a deed of trust that referenced a note "of even date [t]herewith," but the note was actually dated one day prior. *Powe v. Deutsche Bank Nat'l Tr. Co. for Residential Asset Securitization Tr. Series 2004-A7 Mortg. Pass-Through Certificates 2004-G*, No. 4-15-CV-00661-ALMCAN, 2017 WL 9250372, at *6 (E.D. Tex. July 6, 2017), report and recommendation adopted, No. 4:15-CV-661, 2017 WL 4784379 (E.D. Tex. Oct. 24, 2017) (discussing *Beaman v. Head (In re Head Grading Co., Inc.)*, 353 B.R. 122 (Bankr. E.D.N.C. 2006)).

Although the holding in *Head Grading*, cited to by Trustee in support of his position, appears to require a deed of trust to specifically identify the obligation it secures, including the exact same maturity date, subsequent North Carolina cases clarified the holding:

> North Carolina law does not require a deed of trust to use any particular piece of information to identify the underlying debt. Thus, merely because the [d]eed of [t]rust fails to reference the date of the [p]romissory [n]ote does not per se invalidate the [d]eed of [t]rust. Rather, the court focuses on whether the identifying information contained in the deed of trust (whatever that information may be) specifically identifies the underlying debt and is consistent with the underlying debt.

*Beckhart v. Nationwide Tr. Servs., Inc.*, No. 7:11-CV-231-D, 2012 WL 3648105, at *4 (E.D.N.C. Aug. 21, 2012).

---

*Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir. 1997)). Thus, this Court concludes that, if faced with the exact facts presented here, the Idaho appellate courts would reach the same conclusion as this Court with respect to this issue.

MEMORANDUM OF DECISION − 31

In *Willows II, LLC v. Branch Banking & Trust, Co. (In re Willows II, LLC)*, 485 B.R. 528, 537 (Bankr. E.D.N.C. Jan. 10, 2013), the court discussed the rationale for requiring a mortgage to identify the obligation it secured, and applied this same rationale to deeds of trust. In doing so, it elaborated on the holdings from the following cases: *Walston v. Twiford*, 248 N.C. 691, 105 S.E.2d 62 (1958); *Harper v. Edwards*, 115 N.C. 246, 20 S.E. 392 (1894); *Belton v. Bank*, 186 N.C. 614, 120 S.E. 220 (1923). The court explained:

> The decisions in *Walston*, *Harper* and *Belton*, when considered together, explain the rationale for requiring a mortgage to identify the obligation secured. First, as provided in *Harper*, the mortgage must be "sufficient to put subsequent purchasers upon inquiry and to charge them with notice." This entails a determination as to whether the mortgage language would in any way "deceive or mislead" those examining the record as to "the nature or amount of" the obligation secured by the mortgage. Second, the mortgage must also be confined to the obligations intended to be secured by the parties to the mortgage agreement. These two underlying requirements should be taken into consideration when deciding whether a mortgage properly identifies the obligation secured. Finally, as demonstrated by the [c]ourt in *Harper*, concerns for the possibility of "fraudulent substitution" of "fictitious debts" should also influence the analysis.

*Willows II, LLC v. Branch Banking & Trust, Co. (In re Willows II, LLC)*, 485 B.R. at 536–37.

In *Willows*, the recorded deed of trust purported to secure a promissory note dated September 7, 2005, using the "of even date herewith" language. *Id*. at 530. The note was actually dated September 8, 2005. *Id*. The issue before the court was whether the deed of trust properly identified the obligation it secured. *Id*. The court stated:

> To explain, the Deed of Trust is sufficient to put subsequent purchasers and creditors on notice of the nature and amount of the obligation secured. . . .

MEMORANDUM OF DECISION − 32

> *It correctly provides subsequent purchasers and lenders with the amount of the obligation, the fact that the obligation contains a variable interest rate, the borrower, the lender, the loan number, the commitment letter associated with the loan, the property serving as collateral, the grantor, the grantee, the beneficiary of the [d]eed of [t]rust, and the fact that future advances of up to $675,000.00 may be secured by the collateral.* With this information provided in the [d]eed of [t]rust, no subsequent purchasers or lenders could genuinely claim that they had been deceived or misled as to the nature or amount of the secured obligation.

485 B.R. at 537 (emphasis added).

By comparison, the *Willows* court discussed two other cases providing an apt illustration of a situation where a deed of trust did not sufficiently identify the obligation it secured:

> The holdings in *Ferguson* and *Enderle* establish that a deed of trust does not properly identify the obligation secured when the obligor on the note recited in the deed of trust and the obligor on the note produced by the creditor are different, and the deed of trust contains no reference that it secures the debt of the obligor who executed the note produced. As emphasized, both deeds of trust in *Ferguson* and *Enderle* apparently failed to contain any information indicating that they secured the debt owed by the persons named on the note produced by the creditor.

*Id.* at 533 (discussing *Putnam v. Ferguson*, 130 N.C. App. 95, 97–98, 502 S.E.2d 386, 388 (1998) and *In re Enderle*, 110 N.C. App. 773, 775, 431 S.E.2d 549, 550 (1993)).

In North Carolina, state law requires that a deed of trust specifically identify the obligation it secures. *Lucille Borses*, 2020 WL 6038301, at *19. It is notable then, that even under a statute that requires a deed of trust to specifically identify the obligation it secures, North Carolina courts have still found deeds of trust valid even where the maturity date in the deed of trust does not match the maturity date in the underlying obligation. This Court can find no similar statutory requirement under Idaho law.

MEMORANDUM OF DECISION − 33

Trustee cites to Idaho Code §§ 45-1502 and 1503 in support of the proposition that a deed of trust must reference the obligation it purports to secure. However, in *Lucille Borses*, this Court dispensed with that argument, concluding that those statutes do not require deeds of trust to specifically identify the obligation they secure. *Id.* Trustee further cited to "Am. Jur. 2d Sec 64, p. 645" for the proposition that a deed of trust must specifically identify the obligation it purports to secure. While "Am. Jur. 2d Sec 64, p. 645" is not a valid citation, the Court presumes Trustee refers to 54A Am. Jur. 2d Mortgages § 64, which provides, "A valid mortgage contains a description of the obligation it is intended to secure." Not only is this a secondary source and not binding upon this Court, the source does not state that a deed of trust (or a mortgage) must specifically identify the obligation it purports to secure. Rather, it uses the word "description," which is in accord with *Lucille Borses* and the North Carolina cases discussed above.

The facts and the case law cited to in this case are nearly identical to those addressed by this Court in *Lucille Borses* in which this Court stated:

> In Idaho, "[t]he primary purpose of recording is to give notice to others that an interest is claimed in real property." *Anderson Land Co. v. Small Bus. Admin. (In re Big River Grain, Inc.)*, 718 F.2d at 970 (citing *Matheson v. Harris*, 98 Idaho 758, 572 P.2d at 864). Using this proposition, along with the reasoning from *Willows*, this Court concludes that a deed of trust must contain sufficient notice of the obligation it is intended to secure such that no subsequent purchasers or lenders could genuinely claim that they had been deceived or misled as to the nature or amount of the secured obligation.

MEMORANDUM OF DECISION – 34

*Lucille Borses*, 2020 WL 6038301, at *19. The Court finds no reason to deviate from that holding in this case. Accordingly, a deed of trust must contain sufficient notice of the obligation it is intended to secure such that no subsequent purchasers or lenders could genuinely claim that they had been deceived or misled as to the nature or amount of the secured obligation. Under this standard, the Court will address the Deeds of Trust at issue in this case to determine whether they provide sufficient notice of the obligations they are intended to secure.

 *1.* *The Pipkin Note and Deed of Trust*

  The Pipkin Note identifies Shiloh Management Service, Inc. as the debtor and Mountain West IRA, Inc. F/B/O Chester Pipkin IRA as the creditor. Ex. 102. It recites that Shiloh promises to pay back a total sum of $90,000 at 14% interest, and references a subject property of "9212 Fish Pond Lane." *Id.*

  The Pipkin Deed of Trust identifies Shiloh Management Services, Inc. as the Grantor of the Deed of Trust and Mountain West IRA, Inc., F/B/O Chester Pipkin IRA as the Beneficiary. Ex. 103. It states that it is implemented for the purpose of securing a $90,000 promissory note executed by the Beneficiary to the Grantor. *Id.* It also references a property "Commonly known as 9212 Fish Pond Lane." *Id.*

  The Pipkin Note was executed, however, on December 27, 2016, and has a maturity date of July 19, 2017. Ex. 102. The Pipkin Deed of Trust was made December 19, 2016, signed by Mr. Pyles on December 21, 2016, and recorded on December 30, 2016. Ex. 103. It states that it has a maturity date of July 19, 2016. *Id.* Finally, the Pipkin

MEMORANDUM OF DECISION − 35

Deed of Trust provides that it secures a promissory note that was executed "of even date herewith." *Id.*

### 2. The First Stock Boise Note and Deed of Trust

The First Stock Boise Note identifies Shiloh Management Service, Inc. as the debtor and Stock Boise, LLC as the creditor. Ex. 104. It states that Shiloh promises to pay back a total sum of $50,000 at 16% interest. *Id.* It does not reference a subject property; rather, it provides that the Note is Secured by a deed of trust executed by Mr. Pyles on real property described in the deed of trust. *Id.*

The First Stock Boise Deed of Trust identifies Shiloh Management Services, Inc. as the Grantor of the Deed of Trust and Stock Boise, LLC as the Beneficiary. Ex. 105. It recites that it is implemented for the purpose of securing a $50,000 promissory note executed by the Beneficiary to the Grantor. *Id.* It also contains a description of the property that secures the Note: "Lot 1, Block 1, of Gilgal Subdivision, according to the official plat thereof, recorded as instrument no. 288692, records of Owyhee County, Idaho." "Commonly known as 9212 Fish Pond Lane." *Id.*

The First Stock Boise Note was executed, however, on March 15, 2017, and has a maturity date of September 1, 2017. Ex. 104. The First Stock Boise Deed of Trust was made March 15, 2017, signed by Mr. Pyles on March 20, 2017, and recorded on March 21, 2017. Ex. 105. It provides that it has a maturity date of September 1, 2017. *Id.* Finally, the First Stock Boise Deed of Trust states that it secures a promissory note that was executed "of even date herewith." *Id.*

MEMORANDUM OF DECISION – 36

### 3.    The Second Stock Boise Note and Deed of Trust

The Second Stock Boise Note identifies Shiloh Management Service, Inc. as the debtor and Stock Boise, LLC as the creditor. Ex. 107. It provides that Shiloh promises to pay back a total sum of $40,000 at 16% interest. *Id.* It references a subject property of "9212 Fish Pond Lane, Melba, ID 83641." *Id*.

The Second Stock Boise Deed of Trust identifies Shiloh Management Services, Inc. as the Grantor of the Deed of Trust and Stock Boise, LLC as the Beneficiary. Ex. 108. It recites that it is implemented for the purpose of securing a $40,000 promissory note executed by the Beneficiary to the Grantor. *Id.* It also references a property "Commonly known as 9212 Fish Pond Lane, Melba, ID." *Id.*

The Second Stock Boise Note was executed, however, on April 28, 2017, and has a maturity date of December 1, 2017. Ex. 107. The Second Stock Boise Deed of Trust was made April 28, 2017, signed by Mr. Pyles on May 2, 2017, and recorded the same day. Ex. 108. It states that it has a maturity date of December 1, 2017. *Id.* Finally, the Second Stock Boise Deed of Trust provides that it secures a promissory note that was executed "of even date herewith." *Id*.

### 4.    Analysis

Following the reasoning in *Lucille Borses* and the North Carolina cases upon which it relies, this Court concludes that each of the Deeds of Trust at issue here sufficiently identify the obligations they secure. Here, despite the mismatching execution dates between the Notes and corresponding Deeds of Trust, the Deeds of Trust provide

MEMORANDUM OF DECISION − 37

notice to subsequent purchasers and lenders of the amount of the obligation, the property

serving as collateral, the grantor and the beneficiary of the Deeds of Trust, and the fact

that future advances may be secured by the collateral. Accordingly, because the Pipkin

Deed of Trust, the First Stock Boise Deed of Trust, and the Second Stock Boise Deed of

Trust sufficiently identify the obligations they secure, they are not avoidable by Trustee

for the reason that they do not properly identify the obligation.

C.    Avoidance because the legal description in the Quality Properties Deed of Trust
      does not satisfy Idaho's statute of frauds

Finally, the Court turns to Trustee's remaining argument: the Quality Properties

Deed of Trust does not comply with Idaho's statute of frauds because it does not contain

a proper legal description of the Property and, therefore, is subject to avoidance pursuant

to §§ 544 or 558. Dkt. No. 37. In his Amended Complaint, Trustee states, "As a direct

and proximate result of the foregoing, the Trustee is entitled to an order avoiding and

preserving the Stock Boise Deed of Trust as invalid and/or extinguished, pursuant to 11

U.S.C. §§ 544(1)–(3), 550, and 551." Dkt. No. 24. Presumably, Trustee is referring to

§§ 544(a)(1)–(3).

As stated above, pursuant to § 544(a)(3), a bankruptcy trustee has the power to

avoid any transfer that a hypothetical bona fide purchaser for value could have avoided

under the law of the state in which the real property is located. *Chase Manhattan Bank,*

*USA, N.A. v. Taxel (In re Deuel)*, 594 F.3d 1073, 1076 (9th Cir. 2010); *Rainsdon v.*

MEMORANDUM OF DECISION − 38

*Mullen (In re Mullen)*, 402 B.R. 353, 356 (Bankr. D. Idaho 2008).[11] "While the Bankruptcy Code grants the trustee this special power, state law must be consulted to determine whether the trustee is a bona fide purchaser." *Murphy v. The Provident Bank (In re Miller)*, 260 B.R. 158, 160 (Bankr. D. Idaho 2001) (quoting *Briggs v. Kent (In re Professional Inv. Props. of America)*, 955 F.2d 623, 627 (9th Cir. 1992)).

In *In re Miller*, the trustee sought to avoid a deed of trust for lack of valid legal description under § 544(a). *Murphy v. The Provident Bank (In re Miller)*, 260 B.R. at 160–161. However, Judge Pappas found that the deed of trust had been properly recorded, and thus, did in fact provide proper notice concerning the encumbrance on the property. *Id*. Because the deed of trust had been properly recorded and did impart notice to others, the trustee properly gave up her § 544(a) argument. Such is not the situation here, however. As discussed above, the Quality Properties Deed of Trust was not properly acknowledged and, accordingly, should not have been recorded. In Idaho, a person is not a bona fide purchaser if he or she purchases the property with sufficient knowledge to put a reasonably prudent person on inquiry. *Nampa Highway Dist. No. 1 v. Knight*, 166 Idaho 609, 462 P.3d 137, 144 (2020). In other words, a purchaser is put on notice of all things a reasonable investigation would disclose. Because the Quality

---

[11] "The Bankruptcy Code provides bankruptcy trustees with broad powers to assist them in recovering and administering debtors' assets to benefit unsecured creditors in bankruptcy cases. Among these powers are those designed to allow the trustee to recover, or "avoid" transfers made by a debtor prior to filing for bankruptcy. One of these avoiding powers is the so-called "strong-arm power" found in § 544(a)." *Hillen v. Preston Roth IRA, LLC (In re Shiloh Mgmt. Servs., Inc.)*, No. 18-06002-JMM, 2018 WL 3025279 (Bankr. D. Idaho June 15, 2018), *aff'd*, 788 F. App'x 500 (9th Cir. 2019).

MEMORANDUM OF DECISION – 39

Properties Deed of Trust was not acknowledged, it should not have been recorded, and cannot impart constructive notice. *Anderson Land Co. v. Small Bus. Admin. (In re Big River Grain, Inc.)*, 718 F.2d at 970 (citing *Credit Bureau of Preston v. Sleight*, 92 Idaho at 215, 440 P.2d at 148). Therefore, regardless of the allegedly defective legal description contained therein, the Trustee did not have constructive notice Quality Properties' interest in the Property, and he may avoid the Quality Property Deed of Trust pursuant to § 544(a).

Alternatively, even if the Deed of Trust was acknowledged and properly recorded, sufficient to give a subsequent purchaser constructive notice, Trustee takes another approach in attacking Defendant's status. Trustee contends that under Idaho's statute of frauds, the legal description in the Deed of Trust is inadequate, rendering the conveyance unenforceable as between the parties, and therefore avoidable by the Trustee. Pursuant to § 558, any defense available to the debtor, including a statute of frauds defense, is available to the estate. The result here, if § 558 is applicable, would be that Quality Properties would be unable to enforce a secured claim against the Property and the estate. *See id*. The Court, then, must determine whether the legal description contained in the Deed of Trust satisfies Idaho's statute of frauds.

It is well-settled that, "[w]hen interpreting state law, this Court is bound by the decisions of the state's highest court. When state law is unsettled or has not directly addressed an issue, this Court 'must predict how the highest state court would decide the issue.'" *In re McMurdie*, 448 B.R. at 829 (citing *In re Sterling Mining Co.*, 415 B.R. 762,

MEMORANDUM OF DECISION − 40

767–68 (Bankr. D. Idaho 2009) (quoting *In re First Alliance Mortgage Co.*, 471 F.3d

977, 993 (9th Cir. 2006))). "In order to accomplish this goal, the Court may review

decisions from the state court, decisions from other jurisdictions, statutes, treatises, and

restatements for guidance. *Id.* (citing *Spear v. Wells Fargo Bank, N.A. (In re Bartoni–*

*Corsi Produce, Inc.)*, 130 F.3d 857, 861 (9th Cir. 1997)). It follows, then, that to

determine whether the legal description satisfies the statute of frauds, the Court must

examine Idaho law.

"Idaho's statute of frauds requires that an agreement for the sale of real property,

or an interest therein, be in writing in order to be valid." *In re McMurdie*, 448 B.R. 826,

829 (Bankr. D. Idaho 2010) (citing Idaho Code § 9–505(4)). Idaho Code § 9-503 states:

> No estate or interest in real property, other than for leases for a term not
> exceeding one (1) year, nor any trust or power over or concerning it, or in
> any manner relating thereto, can be created, granted, assigned, surrendered,
> or declared, otherwise than by operation of law, or a conveyance or other
> instrument in writing, subscribed by the party creating, granting, assigning,
> surrendering or declaring the same, or by his lawful agent thereunto
> authorized by writing.

Idaho Code § 9-503. "A mortgage, deed of trust or transfer in trust can be created,

renewed or extended only by writing, executed with the formalities required in the case

of a grant or conveyance of real property." Idaho Code § 45-902. In interpreting these

statutory requirements, the Idaho Supreme Court has held that a deed of trust that does

not contain a sufficient description of property cannot convey title to that property. *Richel*

*Family Tr. by Sheldon v. Worley Highway Dist.*, 167 Idaho 189, 468 P.3d 775, 787

(2020). The question, then, is what constitutes a "sufficient description" under Idaho law.

MEMORANDUM OF DECISION − 41

A similar argument was addressed in *Murphy v. The Provident Bank (In re Miller)*, 260 B.R. 158, 160 (Bankr. D. Idaho 2001). In that case, the chapter 7 trustee attempted to avoid a deed of trust because it did not contain a valid legal description required for a bona fide purchaser to be put on constructive notice of an interest in the property. *Id.* A deed of trust in favor of the creditor was recorded and included the phrase "SEE ATTACHED EXHIBIT A." *Id.* However, no exhibit A was attached. The deed of trust recited the street address of the property. The court concluded that the legal description was adequate because the legal description provided a reasonable means of identification, and therefore was an adequate description. *Id*. at 164. In so holding, the Court relied on a prior decision from the Idaho Court of Appeals, *Haney v. Molko*, 123 Idaho 132, 844 P.2d 1382 (Idaho Ct. App. 1992). However, *Haney* was subsequently overruled by the Idaho Supreme Court. *See Ray v. Frasure*, 146 Idaho 625, 200 P.3d 1174 (2009). Accordingly, the Court will address the adequacy of the legal description found in the Quality Properties Deed of Trust under the more recent Idaho Supreme Court rulings.

The most recent Idaho Supreme Court case addressing this issue is *Richel Family Tr. by Sheldon v. Worley Highway Dist.*, 167 Idaho 189, 468 P.3d 775 (2020), in which the Idaho Supreme Court reaffirmed its previous holding in *Ray*. In *Ray*, the Idaho Supreme Court stated:

> An agreement for the sale of real property must not only be in writing and subscribed by the party to be charged, but the writing must also contain a description of the property, either in terms or by reference, so that the

MEMORANDUM OF DECISION − 42

property can be identified without resort to parol evidence. *Garner v. Bartschi*, 139 Idaho 430, 435, 80 P.3d 1031, 1036 (2003).

*Id.* at 628, 200 P.3d at 1177.

To that end, the *Ray* court held that "[a] description contained in a deed will be sufficient so long as quantity, identity or boundaries of property can be determined from the face of the instrument, or by reference to extrinsic evidence to which it refers." *Id.* at 629, 200 P.3d at 1179 (quoting *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 92 P.3d 526 (2004)).

The Idaho Supreme Court's precedent "from the past 100 years permits a party to ascertain a property description from extrinsic evidence *only* when the contract or deed references the extrinsic evidence." *Richel Family Tr. by Sheldon v. Worley Highway Dist.*, 167 Idaho 189, 468 P.3d at 788 (quoting *Ray v. Frasure,* 146 Idaho at 630, 200 P.3d at 1179). Subjective intent or the parties' understanding of the transaction is irrelevant to the analysis. *See David & Marvel Benton Tr. v. McCarty*, 161 Idaho at 151, 384 P.3d at 398.

Turning to the legal description at issue in this case, the parties stipulated as follows:

> The legal description for the Property included in the Quality Properties Deed of Trust recorded document includes the following: (a) a tax parcel number – "RP 0056650010010A", (b) a street address & zip code– "9212 Fish Pond Lane 83641", (c) a lot & block subdivision reference to "Lot 1 Block 1, Gilgal Sub 21 1N 3W"; and (d) the county & state – "County of Owyhee, State of Idaho."

MEMORANDUM OF DECISION – 43

Dkt. No. 42. The legal description to which the parties stipulated contains similar language to the language found in Exhibit A to the Quality Properties Deed of Trust. The Deed of Trust was recorded on May 18, 2017. The Gilgal Subdivision Plat ("Plat") was recorded with the Owyhee County, Idaho, recorder on January 22, 2016 as Instrument No. 288692. Ex. 200. There is no reference to this plat in the Quality Properties Deed of Trust.

The decision in *In re McMurdie*, 448 B.R. 826 (Bankr. D. Idaho 2010) was entered following the Idaho Supreme Court's clarification that conveyances must describe the subject property with exactness. In that case, the chapter 7 trustee moved to avoid or invalidate a lender's lien on the debtors' real property, relying on §§ 544(a) and (b), and § 558. Both the note and the deed of trust included legal descriptions that recited a physical address of the property, the Boise County tax parcel identification number, and the deed of trust also referred to an "Exhibit A" supposedly attached thereto for a complete legal description. *Id.* at 828. However, there was no "Exhibit A" attached to the deed of trust. *Id*. After an in-depth discussion of relevant Idaho case law, as well its prior holding in *In re Miller*, this Court found the legal description at issue to be inadequate. Despite the physical address and the tax parcel number being listed on the deed of trust, this Court held that the legal description did not satisfy Idaho's statute of frauds:

> This Court's ultimate obligation is to determine how the Idaho Supreme Court would decide the issue in this case. . . . In *Ray*, the Idaho Supreme Court made it clear that a property description that consists solely of a physical address within a contract for the sale of real property is not sufficient to satisfy the statute of frauds. The Court predicts that the Idaho

MEMORANDUM OF DECISION – 44

Supreme Court would follow *Ray's* approach and apply it to the deed of
trust situation at bar.

*Id.* at 831 (internal citations omitted). Such is still the obligation of this Court today.
With this precedent to guide it, the Court concludes the Quality Properties Deed of Trust
does not satisfy Idaho's statute of frauds. The deed of trust contains a physical address
and tax parcel identification number only, similar to the conveyance in *McMurdie*. While
this Court in *McMurdie* did not discuss why the tax parcel number did not satisfy Idaho's
statute of frauds, it takes the opportunity to do so now.

In *Ray v. Frasure*, the Idaho Supreme Court found that, when only provided the
physical address as a property description, one could enter the physical address of the
property at the county assessor's office to reveal the name of the property owner. 146
Idaho at 630, 200 P.3d at 1179. Then, someone could enter the name of the property
owner into the system at the county recorder's office to obtain a copy of a prior deed of
trust that contained an exact legal description of the property. *Id*. Nonetheless, despite it
being possible to sleuth one's way to the legal description, the Idaho Supreme Court
reasoned that because the documents did not reference the records at the recorder's office
or the prior recorded deed, the statute of frauds prohibited supplementing the real
property description in the contract with such extrinsic evidence. *Id*.

Applying this analysis to the facts presented here, this Court concludes that using
the tax parcel number to identify an exact description of the property similarly runs afoul
of the statute of frauds. While one could possibly enter the tax parcel number into the
Owyhee County Assessor's system and obtain an exact legal description of the property,

MEMORANDUM OF DECISION – 45

the Owyhee County Assessor's system is not referenced in the Deed of Trust. *See also*

*Yellowstone Poky, LLC v. First Pocatello Assocs., L.P.*, No. 4:16-CV-00316, 2018 WL

2077725, at *6 (D. Idaho Feb. 27, 2018) ("[T]he court finds that the mere listing of a

parcel number is not a clear and unambiguous reference to extrinsic evidence, namely,

records at the County Assessor's Office.").

    Although the Quality Properties Deed of Trust mentions the Gilgal Subdivision,

the document neither references the Gilgal Subdivision Plat, Ex. 200, nor describes where

the plat can be found. A party may only ascertain a legal description from extrinsic

evidence if the contract or deed of trust references the extrinsic evidence. *Richel Family*

*Tr. by Sheldon v. Worley Highway Dist.*, 167 Idaho 189, 468 P.3d at 788 (citing *Ray v.*

*Frasure,* 146 Idaho at 630, 200 P.3d at 1179). Therefore, this Court may not refer to the

Gilgal Subdivision Plat to determine the adequacy of the legal description.

    The only difference, then, between the deed of trust at issue in *McMurdie*, and the

Quality Properties Deed of Trust, is that the Quality Properties Deed of Trust actually

includes an "Exhibit A" to the Deed of Trust, whereas there was no Exhibit A actually

attached to the instrument in *McMurdie*. Here, Exhibit A to the Quality Properties Deed

of Trust provides the following legal description:

    LOT 1 BLOCK 1
    GILGAL SUB
    21    1N    3W.

Ex. 113.

MEMORANDUM OF DECISION − 46

More than a century ago, the Idaho Supreme Court found a property description in a contract to contain an insufficient legal description where the contract described the property as "Lots 11, 12, and 13, in block 13, Lemp's addition," and "Lot 27, Syringa Park addition, consisting of 5 acres." *Allen v. Kitchen*, 16 Idaho 133, 100 P. 1052, 1053 (1909). The description did not contain the city, county, state, or other civil or political division or district in which any of the property was located. *Id.* While the Quality Properties Deed of Trust does contain the county, the zip code, and the state in which the Property sits, the proposition established in *Allen* is still good law today: a conveyance for real property must be complete on its face and extrinsic evidence may only satisfy the statute of frauds if the extrinsic evidence is referenced in the conveyance. *Ray v. Frasure,* 146 Idaho at 629, 200 P.3d at 1178 (citing *Allen v. Kitchen*, 16 Idaho 133, 100 P. at 1053).

This Court has deviated from that rule under particular circumstances. For example, in *Gugino v. Katera, LLC (In re Ricks)*, Judge Myers found that a property description of "all the lots in the first phase of Spur Ranch (recorded name of Bellemeade Subdivision in Eagle, Idaho, legal description attached hereto as Exhibit A)" consisting of "14 lots south of Flint Drive and 30 lots north of Flint Drive" satisfied the statute of frauds. 433 B.R. 806, 814 (Bankr. D. Idaho 2010). In that case, Ricks, a developer, contracted with Kastera, LLC, where Kastera would purchase the land required and Ricks would develop it into residential home lots. *Id.* This Court distinguished *Ricks* from other Idaho case law concerning contracts solely for the sale of property because the contract at

MEMORANDUM OF DECISION – 47

issue in *Ricks* was "but one component of a larger real estate development venture

contemplated by the parties." *Id.* at 820.

In another case, this Court found the property descriptions in a contract for the sale

of property satisfied the statute of frauds where the parties to the contract provided the

best known legal description available to them at the time of contracting. In *Old Cutters,*

*Inc. v. City of Hailey (In re Old Cutters, Inc.)*, this Court stated:

> [T]he [sale contract] and its exhibits adequately describe the location,
> quantity, and exterior boundaries of the [p]roperty. . . . Exhibit 1 to the
> Annexation Agreement is a metes and bounds description of the external
> boundaries of the [p]roperty, and Exhibit 2 generally maps out 116
> potential lots to be developed at a later date.

488 B.R. 130, 142 (Bankr. D. Idaho 2012). Because the neighborhood plat had not yet

been drafted at the time of contracting, this Court held that the legal description satisfied

the statute of frauds because it was the best property description available to the parties at

the time the sale contract was executed.

The Quality Properties Deed of Trust is solely a conveyance of real property; it is

not a hybrid contract that includes personal services as well as a real property

conveyance. Additionally, the Planning and Zoning Commission of Owhyee County

accepted and approved the Gilgal Subdivision Plat on July 22, 2015.[12] Sean P. Sullivan, a

professional land surveyor licensed by the State of Idaho, conducted a survey of the

---

[12] It is important to note here, that the Court is not assessing whether the Plat provided an adequate legal description. Rather, the Court is simply distinguishing this case from *Old Cutters* because there was a more adequate legal description available at the time of conveyance.

MEMORANDUM OF DECISION − 48

Gilgal Subdivision and signed the Plat on August 10, 2015. Ex. 200. The Owyhee County

Surveyor, Richard A. Gray, certified the Gilgal Subdivision Plat on August 13, 2015. *Id.*

The Board of County Commissioners of Owyhee County accepted and approved the

Gilgal Subdivision Plat on September 14, 2015. *Id.* Finally, and perhaps most notably, the

Gilgal Subdivision Plat is affixed with a notary acknowledgement, which states that

Nathan Pyles, President of Shiloh Management Services, Inc., appeared before the notary

and acknowledged that he executed the Plat on October 5, 2015, after obtaining all the

aforementioned signatures. *Id.* The Quality Properties Note and Deed of Trust were

executed more than two months later on December 30, 2015. Ex. 112 and 113.[13]

The Court finds the facts of this case are distinguishable from both *Ricks* and *Old*

*Cutters*. This case is not a situation involving a conveyance of real property coupled with

a personal services contract like in *Ricks*. Moreover, unlike *Old Cutters*, the parties here

had a better, more descriptive legal description available to them at the time the Quality

Properties Deed of Trust was executed and recorded. In fact, Mr. Pyles himself was

---

[13] This Court has previously held that the contract for the sale of lots of an unrecorded plat is not void. *See Gugino v. Katera, LLC (In re Ricks)*, 433 B.R. 806, 822 (Bankr. D. Idaho 2010). The Idaho Supreme Court addressed the same issue in *Cox v. Mountain Vistas, Inc.*, 102 Idaho 714, 639 P.2d 12 (1981). Even though Idaho Code § 50-1316 imposed a fine for selling plots of an unrecorded plat, the Idaho Supreme Court explained that "[t]he language of [Idaho Code § 50–1316] does not prohibit the act, i.e., the sale of lots of an unrecorded plat, *nor does the provision mandate that the vendor must record the plat prior to contracting for the sale of the realty*." *Id.* at 20 (emphasis added). Here, the plat had not yet been recorded, but it had been signed and acknowledged by all relevant parties, including Mr. Pyles himself. Only the last step of recording was left to be performed. Given this Court's holding in *Ricks*, and the Idaho Supreme Court's holding in *Cox v. Mountain Vistas, Inc.*, the Court sees no reason why the unrecorded plat could not have been used to provide an adequate legal description in this case. Thus, unlike *Old Cutters*, there was a more adequate legal description available at the time the Quality Properties Deed of Trust was executed.

MEMORANDUM OF DECISION – 49

instrumental in the creation of the plat. Therefore, the Court concludes this case does not

fall within the exceptions found in *Ricks* and *Old Cutters*.

This Court finds that the description in the Quality Properties Deed of Trust does

not satisfy Idaho's statute of frauds. At the time the Deed of Trust was executed, there

appeared only a street address for the Property, which, on its own, does not satisfy the

statute of frauds. Despite Mr. Pyles' testimony that he did not intend to defraud anyone,

and intended that the Quality Properties Deed of Trust convey a certain property, as noted

above, his subjective intent is not relevant to the Court's analysis. *See David & Marvel*

*Benton Tr. v. McCarty*, 161 Idaho at 151, 384 P.3d at 398. Moreover, even if Exhibit A

was incorporated into the Deed of Trust by reference and the stipulated legal description

was accepted, this still does not adequately describe the Property. The recitation of "Lot 1

Block 1 in Gilgal Subdivision, 21 1N 3W," with no reference to the Gilgal Subdivision

Plat, or to any records that might contain the Plat, does not provide sufficient information

from which a person could discern the exact legal bounds of the property. One would

have to reference another document or other records to figure out the location and size of

Lot 1 Block 1 of Gilgal Subdivision, and the Quality Properties Deed of Trust refers to no

extrinsic records. As stated above, under Idaho law, if extrinsic evidence is not referenced

in the conveyance for real property, then the legal description in those records cannot be

used to satisfy the statute of frauds. *See Ray v. Frasure*, 146 Idaho at 630, 200 P.3d at 11.

Accordingly, under § 558, Trustee can assert such a defense in response to Quality

Properties' secured claim against the estate.

MEMORANDUM OF DECISION − 50

### *Conclusion*

The Pipkin Deed of Trust, First Stock Boise Deed of Trust, the Second Stock Boise Deed of Trust, and the Quality Properties Deed of Trust are avoidable by Trustee pursuant to § 544 due to the lack of a valid notary acknowledgement, but are not subject to avoidance on the grounds that they provide insufficient notice of the underlying obligations and the interests claimed in real property.

Finally, Trustee is entitled to assert a statute of frauds defense against Quality Properties' secured claim against the estate pursuant to § 558 because the Quality Properties Deed of Trust does not provide an adequate legal description.

A separate judgment will be entered.

DATED:  January 15, 2021

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION – 51